**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| SHIRLEY DUNLAP, Individually and For Others Similarly Situated<br><br>v.<br><br>SABER HEALTHCARE HOLDINGS, LLC | **Case No. ________________**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Shirley Dunlap (Dunlap) brings this class and collective action to recover unpaid wages and other damages from Saber Healthcare Holdings, LLC (Saber).

2. Saber employed Dunlap as one of its Hourly Employees (defined below) in Pennsylvania.

3. Saber pays Dunlap and the other Hourly Employees by the hour.

4. Dunlap and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But Saber does not pay Dunlap and the other Hourly Employees at their agreed hourly rates for all hours worked, including overtime hours.

6. Instead, Saber automatically deducts 30 minutes a day from Dunlap and the other Hourly Employees for so-called "meal breaks" (Saber's "auto-deduction policy").

7. But Saber regularly fails to provide or make available *bona fide* 30-minute meal breaks to Dunlap and the other Hourly Employees.

8. Rather, Saber requires them to remain on duty throughout their shifts and subjects them to interruptions during their unpaid, off the clock "meal breaks."

9. Dunlap and the other Hourly Employees are thus not paid their agreed rates for all hours worked.

10. Additionally, Saber requires the Hourly Employees to clock in and out for their shifts via its timekeeping system but automatically rounds their clock in and clock out punches to the nearest quarter hour for its own primary benefit (Saber's "rounding policy").

11. Finally, Saber does not pay Dunlap and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

12. Instead, Saber pays Dunlap and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, that it excludes from their regular rates of pay for overtime purposes (Saber's "bonus pay scheme").

13. Saber's auto-deduction policy, rounding policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) because these policies deprive Dunlap and the other Hourly Employees of premium overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

14. Additionally, Saber's auto-deduction policy and rounding policy violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Dunlap and the other Hourly Employees of agreed, earned wages, including overtime wages, on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

15. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17. This Court has general personal jurisdiction over Saber because it is a limited liability company registered to do business in the Commonwealth. *See*, *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also*, 42 Pa. Cons. Stat. § 5301.

18. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in and around Allegheny County, Pennsylvania, which is in this District and Division. 28 U. S. C § 1391(b)(2).

19. Specifically, Saber employed Dunlap and other Hourly Employees pursuant to its auto-deduction policy, time rounding policy and bonus pay scheme in and around Allegheny County.

## PARTIES

20. Saber employed Dunlap as a Licensed Practical Nurse (LPN) from approximately September 2024 until November 2025.

21. Throughout her employment, Saber classified Dunlap as non-exempt and paid her by the hour.

22. Dunlap's written consent is attached as **Exhibit 1**.

23. Dunlap brings this class and collective action on behalf of herself and other similarly situated Saber employees.

24. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees Saber employed in accordance with its bonus pay scheme, rounding policy, and/or who auto-deduction policy at any time during the past 3 years through final resolution of this action (the "FLSA Collective Members").**[1]

---

[1] This putative collective excludes any claims previously resolved by *Brelo v. Saber Healthcare Holdings, LLC*, Case No. 1:22-cv-02273-CAB (N.D. Ohio); *Chapman v. Saber Healthcare Group, LLC, et al.*, Case

25. Dunlap also seeks to represent a Pennsylvania class under FED. R. CIV. P. 23 defined as:

> **All hourly employees who worked in, or were based out of, Pennsylvania, who Saber employed in accordance with its bonus pay scheme, rounding policy, and/or auto-deduction policy during the past 3 years through final resolution of this action (the "Pennsylvania Class Members").**

26. The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

27. Saber is an Ohio limited liability company that maintains its headquarters in Beachwood, Ohio.

28. Saber may be served with process through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

## COVERAGE UNDER THE FLSA

29. At all relevant times, Saber was an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Saber was an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, Saber was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as computers, cellphones, personal protective equipment, etc., that have been moved in or produced for commerce.

---

No. 2:20-cv-00106-MSD-DEM (E.D. Va.); *Kuchar v. Saber Healthcare Group, LLC, et al.*, Case No. 1:20-cv-02542 (N.D. Ohio).

32. At all relevant times, Saber had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33. At all relevant times, Saber employed Dunlap and the other Hourly Employees as "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34. At all relevant times, Dunlap and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce, or otherwise handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

## FACTS

35. Saber operates "over 140 skilled nursing and assisted living facilities in six states (Ohio, Indiana, Pennsylvania, Delaware, Virgina and North Carolina)" And employs more than 14,000 caregivers.[2]

36. Saber touts that it "provide[s] numerous career development opportunities" and invites applicants to "explore the current job opportunities across each of the affiliated communities."[3]

37. And Saber advertises open positions across all its facilities and solicits applications for these positions through its website.[4]

38. To meet its business objectives, Saber employs workers, like Dunlap and the other Hourly Employees, to provide healthcare services to its patients.

[2] https://saberhealth.com/why-saber (last visited November 19, 2025).
[3] https://saberhealth.com/careers (last visited November 19, 2025).
[4] https://jobs.apploi.com/profile/saber-health-group?utm_source=false&utm_medium=&utm_campaign=truman (last visited November 19, 2025).

39. For example, Saber employed Dunlap as an LPN in its Cheswick, Pennsylvania skilled nursing and rehab community from approximately September 2024 until November 2025.

40. Dunlap's job duties included assisting patients with personal care tasks, assessing and monitoring residents, measuring residents' vitals, administering medications, treating residents in accordance with their doctors' instructions, and charting treatments.

41. Dunlap regularly worked more than 40 hours in a workweek.

42. Indeed, Dunlap typically worked approximately 8 to 9 hours a day, 5 days a week "on the clock" (40 to 45 hours a workweek).

43. Saber paid Dunlap approximately $34.75 an hour.

44. Likewise, the other Hourly Employees typically work approximately 8 to 9 hours a day, 5 days a week "on the clock" (40 to 45 hours in a workweek).

45. And Dunlap and the other Hourly Employees are required to report their "on the clock" hours via the timekeeping system Saber selects and controls.

46. At the end of each pay period, the Hourly Employees receive wages from Saber determined by common systems and methods that Saber selects and controls.

47. But Saber does not pay Dunlap and the other Hourly Employees at their agreed rates for all hours worked.

48. Instead, Saber subjects Dunlap and the other Hourly Employees to its common practice of automatically deducting 30 minutes from their hours and wages each shift for "meal breaks," regardless of whether they actually receive a *bona fide* meal break.

49. Indeed, Saber simply assumes that Dunlap and the Hourly Employees receive a *bona fide* meal break each workday.

50. But Saber fails to provide or make available *bona fide* meal breaks.

51. Instead, Saber requires Dunlap and the other Hourly Employees to remain on duty and working throughout their shifts and regularly subjects them to interruptions during their unpaid, so called "meal breaks."

52. Indeed, because of these regular work interruptions, Dunlap and the Hourly Employees are not free to engage in personal activities during unpaid "meal breaks."

53. Rather, during their unpaid "meal breaks," Dunlap and the Hourly Employees are required to perform their regular job duties and responsibilities.

54. Thus, Dunlap and the Hourly Employees routinely spend their unpaid "meal breaks" performing their normal job duties for Saber's, not their own, predominant benefit.

55. This unpaid time is compensable under the FLSA and Pennsylvania law because Saber knew, or should have known, that (1) Dunlap and the Hourly Employees were performing unpaid work during "meal breaks," (2) they were interrupted with work duties during attempted "meal breaks," (3) they were not completely relieved of all duties during "meal breaks," (4) they entirely skipped "meal breaks" due to work demands, (5) the "meal breaks" were less than 30 consecutive minutes, (6) they were not free to engage in personal activities during "meal breaks" because of regular interruptions, (7) they remained on Saber's premises, under Saber's supervision during unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their regular duties for Saber's predominant benefit.

56. In addition to deducting from these employees' wages for so called "meal periods," Saber also subjects Dunlap and the Hourly Employees to its rounding policy.

57. Specifically, Saber automatically rounds Dunlap's and the other Hourly Employees' clock in and clock out punches to the nearest quarter hour for Saber's—not the employees'—primary benefit.

58. Saber prohibits Dunlap and the other Hourly Employees from clocking in for their shifts more than 7 minutes before their scheduled start times and clocking out more than 7 minutes after their scheduled end times.

59. And Saber considers Dunlap and the other Hourly Employees late and takes disciplinary action or threatens to do so if they clock in even a minute after their scheduled start time and considers them to leave early if they clock out even a minute before their scheduled end time.

60. Likewise, Saber takes disciplinary action or threatens to do so if they clock in more than 7 minutes prior to their scheduled start time or clock out more than 7 minutes after their scheduled end time.

61. Saber further requires and expects Dunlap and the other Hourly Employees to perform their normal job duties immediately upon clocking in.

62. By enforcing these policies, Saber ensures its rounding policy benefits Saber—and detriments Dunlap and the other Hourly Employees.

63. Thus, under Saber's rounding policy, Dunlap and the other Hourly Employees are denied wages at their agreed rates for hours worked, and overtime wages during workweeks in which they work more than 40 hours.

64. During weeks they work more than 40 hours, Saber does not pay them overtime wages for all overtime hours worked because it fails to include time these employees worked "off the clock" during their unpaid "meal periods" and due to its rounding policy.

65. Saber fails to exercise its duty as Dunlap's and the other Hourly Employees' employer to ensure these employees are not performing work that Saber does not want performed "off the clock."

66. And Saber knows, should know, or recklessly disregards whether Dunlap and the other Hourly Employees routinely perform work "off the clock."

67. Thus, Saber required, requested, suffered, or permitted Dunlap and the other Hourly Employees to work "off the clock" for its predominant benefit during their unpaid "meal breaks" and due to its rounding policy.

68. Despite accepting the benefits, Saber does not pay Dunlap and the other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks" and that is rounded away.

69. Finally, Saber does not pay Dunlap and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

70. Instead, Saber pays Dunlap and the other Hourly Employees under its bonus pay scheme.

71. Specifically, Saber agrees to pay and subsequently pays Dunlap and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, if they fulfill Saber's criteria.

72. But Saber fails to include these non-discretionary bonuses in Dunlap's and the other Hourly Employees' regular rates of pay for overtime purposes during workweeks they work more than 40 hours.

73. For example, Saber promised to pay and subsequently paid Dunlap a sign on bonus of approximately $3,750 in 2025 in exchange for her continued employment but excluded this sign on bonus from her regular rate of pay for overtime purposes during all workweeks she worked in excess of 40 hours.

74. Thus, under its bonus pay scheme, Saber does not pay Dunlap and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

75. As a result, under Saber's auto-deduction policy, rounding policy, and bonus pay scheme, Dunlap and the other Hourly Employees are denied earned wages for hours worked, including overtime wages for overtime hours.

## Class And Collective Action Allegations

76. Dunlap brings her Pennsylvania state law claims as a class action pursuant to Fed. R. Civ. P. 23 and brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

77. Like Dunlap, the other Hourly Employees are victimized by Saber's bonus pay scheme, rounding policy, and/or auto-deduction policy.

78. Other Hourly Employees worked with Dunlap and indicated they were paid in the same or similar manner, performed similar work, and were subject to Saber's same or similar bonus pay scheme, rounding policy, and/or auto-deduction policy.

79. Based on her experiences with Saber, Dunlap is aware Saber's bonus pay scheme, rounding policy, and auto-deduction policy were imposed on other Hourly Employees.

80. The Hourly Employees are similarly situated in the most relevant respects.

81. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

82. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

83. Rather, the Hourly Employees are held together by Saber's bonus pay scheme, rounding policy, and auto-deduction policy, which systematically deprive them of earned wages at their agreed rates, including overtime wages.

84. Saber's records reflect the number of hours the Hourly Employees recorded working "on the clock" each workweek.

85. Saber's records further reflect that it automatically deducted 30 minutes a workday for so called "meal breaks."

86. Saber's records show it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own benefit and to the detriment of the Hourly Employees.

87. Saber's records also show it paid Dunlap and the other Hourly Employees sign on bonuses and other non-discretionary bonuses it excluded from their regular rates of pay for overtime purposes.

88. The back wages owed to Dunlap and the other Hourly Employees can be calculated using same formula applied to the same records.

89. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Saber's records, and there is no detraction from the common nucleus of liability facts.

90. Therefore, the issue of damages does not preclude class or collective treatment.

91. Dunlap's experiences are typical of the other Hourly Employees.

92. Dunlap has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

93. Dunlap has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Pennsylvania law.

94. Dunlap and her counsel will fairly and adequately protect the interests of the Hourly Employees.

95. Dunlap retained counsel with significant experience in handling complex class and collective action litigation.

96. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Saber will reap the unjust benefits of violating the FLSA and Pennsylvania law.

97. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

98. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Saber.

99. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

100. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

a. Whether Saber paid the Hourly Employees non-discretionary bonuses;

b. Whether Saber excluded non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay for overtime purposes;

c. Whether Saber automatically deducted 30 minutes from the Hourly Employees' hours for "meal breaks" that were not *bona fide*, continuous, and uninterrupted;

d. Whether Saber's auto-deduction policy deprived the Hourly Employees of agreed, earned wages for time worked during meal breaks that were not *bona fide*, continuous, and uninterrupted;

e. Whether Saber automatically rounded the Hourly Employees' punch in and out times for its own primary benefit;

f. Whether Saber's decision not to pay the Hourly Employees earned wages, including overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked was made in good faith;

g. Whether Saber failed to pay the Hourly Employees earned wages for all their hours worked, in violation of the WPCL and whether this was the result of a bona fide dispute; and

h. Whether Saber's violations of the FLSA and Pennsylvania law were willful.

102. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

103. The Hourly Employees are known to Saber, are readily identifiable, and can be located through Saber's business and personnel records.

**SABER'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A BONA FIDE DISPUTE**

104. Saber knew it employed Dunlap and the other Hourly Employees.

105. Saber knew it was subject to the FLSA's and PMWA's overtime provisions.

106. Saber knew the FLSA and PMWA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

107. Saber knew it was subject to the WPCL.

108. Saber knew the WPCL required it to pay employees, including its Hourly Employees, all earned wages at the agreed rates (including overtime) on their regular paydays and following the termination of employment.

109. Saber knew Dunlap and the other Hourly Employees were non-exempt employees entitled to overtime pay.

110. Saber knew Dunlap and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours via its timekeeping system.

111. Saber knew it was required to include the non-discretionary bonuses it paid the Hourly Employees in their regular rates of pay for overtime purposes.

112. Saber nonetheless knew it excluded this compensation from the Hourly Employees' regular rates of pay for overtime purposes.

113. Saber knew it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

114. Saber knew it failed to provide or make available *bona fide*, uninterrupted meal breaks to Dunlap and the other Hourly Employees.

115. Saber knew Dunlap and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

116. Saber knew it required, requested, suffered, or permitted Dunlap and the other Hourly Employees to work for its predominant benefit during their unpaid "meal breaks."

117. Saber knew that, as Dunlap's and the other Hourly Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Saber did not want performed.

118. Saber knew Dunlap and the other Hourly Employees regularly worked "off the clock" during their "meal breaks" performing their regular job duties for Saber's predominant benefit.

119. Saber's decision to automatically deduct at least 30 minutes a workday from Dunlap's and the other Hourly Employees' hours for "meal breaks" was neither reasonable, nor was it made in good faith.

120. Saber's failure to pay its Hourly Employees earned wages for all hours worked on regular paydays and following the termination of their employment was unreasonable.

121. Saber's failure to pay its Hourly Employees their earned wages was not the result of a *bona fide* dispute.

122. Saber knowingly, wilfully, and/or in reckless disregard carried out its unlawful bonus pay scheme, rounding policy and auto-deduction policy that deprived Dunlap and the other Hourly Employees of earned wages, including overtime wages at the required rate of pay—based on all remuneration—for all overtime hours, in violation of the FLSA, PMWA, and WPCL.

123. Saber knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Pennsylvania law.

124. Indeed, Saber has previously been sued on multiple occasions for the same or similar violations alleged in this complaint. *See e.g.*, *Brelo v. Saber Healthcare Holdings, LLC*, Case No. 1:22-cv-02273-CAB (N.D. Ohio); *Chapman v. Saber Healthcare Group, LLC, et al.*, Case No. 2:20-cv-00106-MSD-DEM (E.D. Va.); *Kuchar v. Saber Healthcare Group, LLC, et al.*, Case No. 1:20-cv-02542 (N.D. Ohio).

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

125. Dunlap brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

126. Saber violated, and is violating, the FLSA by employing non-exempt employees such as the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without

paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

127. Saber's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

128. Accordingly, Saber owes the FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

129. Because Saber knew or showed reckless disregard for whether its bonus pay scheme, rounding policy, and auto-deduction policy violated the FLSA, Saber owes the FLSA Collective Members these wages for at least the past 3 years.

130. Saber is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

131. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
## (PENNSYLVANIA CLASS)

132. Dunlap brings her PMWA claim as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

133. The conduct alleged violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*)

134. At all relevant times, Saber was subject to the PMWA because Saber was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

135. At all relevant times, Saber employed each Pennsylvania Class Members as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

136. The PMWA requires employers, like Saber, to pay non-exempt employees, including the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of

pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

137. Saber violated, and is violating, the PMWA by employing non-exempt employees (the Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

138. Saber's unlawful conduct harmed the Pennsylvania Class Members by depriving them of the overtime wages they are owed.

139. Accordingly, Saber owes the Pennsylvania Class Members the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

140. Finally, the Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

## COUNT III
## FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL
## (WPCL CLASS)

141. Dunlap brings her WPCL claims as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

142. Saber's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq*.

143. At all relevant times, Saber was subject to the WPCL because Saber was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

144. At all relevant times, Saber employed each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

145. The WPCL requires employers, like Saber, to pay employees, including the Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

146. Saber violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

147. The Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

148. Saber's unlawful conduct harmed the Pennsylvania Class Members by depriving them of the earned wages they are owed.

149. Saber's failure to pay the Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

150. Rather, Saber knowingly failed to pay earned wages to the Pennsylvania Class Members.

151. Accordingly, Saber owes the Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

152. Saber also owes the Pennsylvania Class Members liquidated damages in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.9a.

153. Finally, the Pennsylvania Class Members are entitled to recover their attorney's fees and costs. See 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

154. Dunlap demands a trial by jury on all Counts.

## RELIEF SOUGHT

Dunlap, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Dunlap and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Saber liable to Dunlap and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e. An Order finding Saber liable to Dunlap and the other Hourly Employees for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f. An Order finding Saber liable to Dunlap and the other Hourly Employees for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

g. A Judgment against Quality awarding Dunlap and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA, PMWA, and/or WPCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: December 3, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist
PA ID No. 85745
William F. Goodrich
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

William C. (Clif) Alexander
Austin W. Anderson
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

**ATTORNEYS FOR DUNLAP AND THE HOURLY EMPLOYEES**